Good morning, Your Honors. Bo Sterling, Sterling Law, LLC, Pro Bono Council, on behalf of the appellant, Mr. Kamani. The Court is being asked in this appeal to decide whether Mr. Kamani is a United States citizen or a deportable alien. At issue are several provisions of the Child Citizenship Act of 2001 legislation. Now, Mr. Kamani was 23 years old at the time of the deportation proceedings were initiated by the Department of Homeland Security. He came to the United States as a lawful, admitted as a lawful permanent resident at the age of 11. His father nationalized when Mr. Kamani was 14. Now, the sections from the Child Citizenship Act, which amended Section 320 of the Immigration and Naturalization Act, are Section 101A, which we've been referring to in the briefs as the requirements section, and Section 104, which we've been referring to as the effective date provision. Now, it's our position that Mr. Kamani became a United States citizen on February 27, 2001, the effective date of the Child Citizenship Act. That effective date provision says that the Act shall take effect 120 days after the date of the enactment of the Act. That's where we get the February 27 date. And it shall apply to individuals who satisfy the requirements of the Section 101, which I'll get to in a minute, on such effective date. Now, the key language that we've pointed to in arguing that the Act was meant to apply to Mr. Kamani, even though at the time he was 19 years old, is the language has been fulfilled in Section 101A, the first paragraph. Our argument is that that language, which is then followed by the three conditions, that language was meant to imply that the three conditions, even though they're in the present tense, can have been fulfilled in the past. In this case, Mr. Kamani did meet each of those conditions and became a United States citizen. Now, unless you have any specific questions, I'll go ahead and get into a little bit more detail on each of those provisions. Just one. How do we deal with Hughes? How do we deal with Hughes? Hughes, obviously, is on point, and that's why I made a motion for en banc consideration in the first instance before filing the briefs. Apparently, that motion was denied through inaction. But so the best we can hope for during this hearing, or as a result of this hearing, is some inclination from this panel that they'd be inclined to grant rehearing and grant en banc reconsideration, which, however, this is not the case. And so I just decided I will renew that motion. So Hughes is indistinguishable? I don't see how it can be distinguished, Your Honor, honestly. I mean, it dealt with an adoption situation rather than somebody who came to the United States, as did Mr. Kamani. But it's directly on point. Now, Hughes, and I've argued in the briefs and I pointed this out, our position is that Hughes was incorrectly decided. That it didn't properly take into account that has-been-fulfilled language. Instead, the court in Hughes went right to the present tense that's used in the three conditions and said that when Section 104 refers to the requirements having been fulfilled, it's referring to those three conditions rather than what we're arguing is a single requirement, that those conditions have been fulfilled. As of the effective date. And again, our argument, as it says forth in the briefs, is that has-been-fulfilled language is meant to indicate that the conditions can have been fulfilled in the past, and that when we use is in the three conditions sections, it's really meant in a temporally neutral manner. Has any court of appeals accepted this argument? No, Your Honor. As far as I know, the precise statutory language analysis that we've undertaken hasn't been addressed by any court. And the second, I believe the second, fifth, eleventh, and of course the ninth have all agreed that you must have been under the age of 18. But again, the act was in 2001. Hughes came out pretty shortly thereafter. Nemi also in the Fifth Circuit came out a little bit thereafter. And our position is, well, let me back up. And then shortly after that, the Board of Immigration Appeals then addressed the issue in quite a bit of detail, more detail than in the decisions from the courts, although it also came down contrary to our position. But I would ask, and we are asking, that the Ninth Circuit, now that it's had an opportunity to look back at all the cases, look at all the cases, look a little more closely at the reasoning and the arguments, will change its position and realize that Hughes wasn't correctly decided. Basically, what you're asking is for us to grandfather in all of these people, regardless of age, right? I mean, that's the potential. It's thousands. Honestly, Your Honor, I don't know how many people it is. My concern is with Mr. Kamani. We do know that when the legislation was drafted, there were amendments to the legislation done at the suggestion of the Justice Department and the Department of State. And, in fact, it appears that, as far as I can tell, the Justice Department wrote the language, including the effective date provision. And so when we, and in particular, that second part of the effective date provision, the one that refers to it applying to individuals who meet the requirements as of the effective date, it's certainly my argument that the intention of the Justice Department, when they inserted that in there, is to make it clear that, I wouldn't use the word grandfathered, I'd say that it's intended to be a sweep-up provision and to give warning to people during that four-month period from the passing of the legislation until the time when it goes into effect, that if you meet the conditions on that date, you're going to become a United States citizen. So if you don't want to become a United States citizen, you need to leave the country or take whatever means you need to do. Why wouldn't, even if we're writing a clean slate, why wouldn't the BIA's interpretation be entitled to Chevron deference at this juncture? Well, we've argued that point in the briefs, and Chevron deference only applies to the specific points that are given to the board for the purpose of the case, and that's why we saw what the congressional intent was, and that's a rule for this Court rather than the board. I'd like to reserve the rest of my time, if I may, Your Honor. Roberts. Sure. Thank you for your argument, and we'll hear from the government at this time. Mr. McLaughlin. Thank you, Your Honor. May it please the Court, my name is Andrew McLaughlin, and I represent the Respondent Attorney General of the United States in this case. I gather from what's preceded to this point that I guess I need to ask the Court, do you wish me to respond, or do you wish to hold this for a potential rehearing and bonk argument, because this Court doesn't have the power to reverse Hughes. So I guess that's my question. Do you wish me to sit down now and hear our arguments on rehearing and bonk, or do you want me to respond? A quiet poll of my clients suggests that you've done your best at your argument. Thanks for coming in today. Anything in rebuttal? Not much in rebuttal. There's not much to rebut. I mean, again, I moved for en banc consideration in the first instance, realizing that this Court generally applies the rule, that only the en banc Court can change a previous ruling. That's a rule, as I understand it, a rule of comedy rather than a rule of jurisdiction, but still I expect that the Court will follow it. So, again, I don't know what else to say other than that the legislation was passed in 2001, recognizing that there was a great injustice being done in certain cases where you have people who have lived in the country for many years but never became United States citizens because of certain actions that were taken or not taken by their parents. Mr. Kamani certainly falls into that category. He served his six-month or so sentence on the drug sale charges, or the possession charges, and any other person who was a citizen would then get to move on with their life. But instead, Mr. Kamani, at age 23, having been in the country for 13 years, is being sent back to Kenya, where he hasn't really any ties. It's certainly our position that the legislation was intended to remedy that situation, and I'll leave it at that, Your Honor. Thank you both for your arguments.
judges: Hawkins, Thomas, Clifton